**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

AARON TOMPKINS,

                            Plaintiff,

            - v -                                          Civ. No. 9:10-CV-1200
                                                                   (LEK/RFT)

C.O. D. BEANE; MICHAEL J. BOYNTON; RAYMOND
T. FURNIA; STEVE E. JAQUISH; JOHNNY KILBURN;
C. LAWFER; WILLIAM J. NELSON; JAMES K. RABIDEAU,
*also known as James K. Rabiden*; TRAVIS R. SMITH; EVAN R.
TAMER; *Correctional Officers, Clinton Correctional Facility,*
*sued in their individual and official capacities*,

                            Defendants.

**APPEARANCES:**                                          **OF COUNSEL:**

AARON TOMPKINS
Plaintiff, *Pro Se*
03-B-2345
Auburn Correctional Facility
P.O. Box 618
Auburn, NY 13021

HON. ERIC T. SCHNEIDERMAN                      DEAN J. HIGGINS, ESQ.
New York State Attorney General                Assistant Attorney General
Attorney for Defendant
The Capitol
Albany, NY 12224

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER

        *Pro se* Plaintiff Aaron Tompkins brings this civil rights action, pursuant to 42 U.S.C. § 1983,

alleging that his Eighth Amendment rights were violated by the Defendants, who subjected him to

excessive force.  Dkt. No. 6, Am. Compl.  Plaintiff has moved for Summary Judgment under Federal

Rule of Civil Procedure 56(b).  Dkt. No. 58.  Defendants oppose Plaintiff's Motion and have filed

a Cross-Motion for Summary Judgment. Dkt. No. 61. For the reasons that follow, this Court recommends that Defendant's Motion be **granted**, Plaintiff's Motion be **denied**, and Plaintiff's Complaint be **dismissed** in its entirety.

## I. BACKGROUND[1]

On May 3, 2009, at approximately 3:50 p.m., Plaintiff, who was incarcerated at Auburn Correctional Facility, was escorted out of the mess hall by Defendant Boynton. Defs.' 7.1 Statement at ¶ 5. Defendants allege that Plaintiff was removed from the mess hall because Defendant Boynton witnessed Plaintiff receive an unknown object from another inmate, Dkt. No. 61-19, Raymond T. Furnia Decl., dated Jan. 26, 2012, at ¶ 3, while Plaintiff claims he was removed "for unknown reasons," Pl.'s 7.1 Statement at ¶ 1.

As Boynton led Plaintiff out of the mess hall, Plaintiff turned, "swung around," and hit Boynton in the face with his hands. *See* Dkt. Nos. 61-8, Pl.'s Dep. Tr., dated Sept. 2, 2011, at pp. 29-31; & 61-18, Michael Boynton Decl., dated Jan. 26, 2012, at ¶ 5. Defendant Kilburn responded to assist Defendant Boynton. Defs.' 7.1 Statement at ¶ 8. Defendants claim that Plaintiff "started swinging violently[,] striking Officer Kilburn twice" in the face. *See* Boynton Decl. at ¶ 5; Furnia Decl. at ¶ 4.[2] Plaintiff, on the other hand, claims that Kilburn and Defendant Smith "joined the assault which caused the Plaintiff to break away from []Boynton, fall to the floor and curl up." Pl.'s 7.1 Statement at ¶ 3.

---

[1] The following facts were derived mainly from the Plaintiff's Statement of Facts, submitted in accordance with Northern District of New York Local Rule 7.1, and Defendants' Statement and Response thereto. *See* Dkt. Nos. 58-2, Pl.'s Statement of Undisputed Facts [hereinafter "Pl.'s 7.1 Statement"]; 61-3, Defs.' Resp. to Pl.'s 7.1 Statement; & 61-3, Defs.' Statement Pursuant to Rule 7.1(a)(3) [hereinafter "Defs.' 7.1 Statement"]. Where there is no dispute on a particular statement of fact proffered in either the Defendants' 7.1 Statement or the Plaintiff's 7.1 Statement, we will not cite to both Statements.

[2] Defendants also claim that at this time, Plaintiff placed an unknown object into his mouth. *See* Defs.' 7.1 Statement at ¶ 8. Plaintiff does not specifically controvert or address this allegation in his 7.1 Statement.

Other correctional officers responded to the scene.  Defendant Jaquish grabbed Plaintiff's right hand and Defendant Smith grabbed Plaintiff's left hand, in an attempt to place Plaintiff's hands behind his back.  Defs.' 7.1 Statement at ¶ 9.  Plaintiff states that he bit at least one of these two Defendants' hands, because the officer "was bending [Plaintiff's] fingers all the way back;" Defendants claim that Plaintiff bit both Defendant Jaquish and Smith's hands.  *Id.* at ¶ 10; Dkt. No. 58-2, Ex. D to Pl.'s Mot. for Summ. J., Tr. of Tier III Hr., at p. 4.  Plaintiff was forced to the floor by the responding correctional officers, when, Plaintiff claims, Defendants Jaquish, Boynton, Kilburn, Smith, Tamer, and Nelson "beat Plaintiff while he was on the ground in a submissive position."  Pl.'s 7.1 Statement at ¶¶ 3-4.  Conversely, Defendant Kilburn claims that he struck Plaintiff on his left shoulder with his baton in an attempt to gain compliance, but Plaintiff would not stop struggling with the facility staff.  Defs.' 7.1 Statement at ¶ 11.  Defendants Tamer and Nelson struck Plaintiff with their fists in his upper and lower back area while "repeating for him to stop resisting . . . . [but h]e continued to struggle violently."  Dkt. No. 61-23, William Nelson Decl., dated Jan. 27, 2012, at ¶¶ 5-6; *see also* Defs.' 7.1 Statement at ¶ 12.  Defendant Boynton then placed handcuffs on Plaintiff.  Defs.' 7.1 Statement at ¶ 15.

Plaintiff was escorted to the hospital.  Defs.' 7.1 Statement at ¶ 16.  While Defendants claim all force was stopped once Plaintiff was restrained in handcuffs, *id.* at ¶ 15, Plaintiff alludes that a "second assault took place" before he was examined and interviewed at the hospital, Pl.'s 7.1 Statement at ¶ 6.[3]  While Plaintiff does not describe the purported attack in any way in his 7.1 Statement of Facts, he mentions in his Deposition testimony that he was punched in the face or head

---

[3] Plaintiff cites to a video in support of his statement that "he was also present in the hospital when the second assault took place."  *See* Pl.'s 7.1 Statement at ¶ 6.  Plaintiff must be citing the video for the proposition that he was in the hospital.  We have examined the provided video and there is no assault whatsoever documented.  *See* Dkt. No. 65, Ex. C to Defs.' Cross-Mt. for Summ. J.

by the two officers escorting him to the hospital; but he could not identify the officers.  Pl.'s Dep. Tr. at pp. 39-41.  However, by referring to incident reports, Plaintiff stated that the escorting officers' names were Defendants Lawfer and Beane.  *Id.* at p. 41.  Plaintiff then states that Defendant Furnia joined in the assault and started hitting him in the observation room, but stopped once a camera was turned on.  *Id.* at pp. 45-46.[4]

Plaintiff states that as a result of the assault, he suffered bruises, swelling, and lacerations to his face and head, and now has permanent damage to his left eye.  Pl.'s 7.1 Statement at ¶ 7. Defendants deny that Plaintiff received damage to his left eye, but admit that Plaintiff "sustained bruises and welts and swelling as a result of [D]efendants['] efforts to bring his violent acts to an end."  Dkt. No. 61-1, Defs.' Resp. to Pl.'s 7.1 Statement, at ¶ 7.  Defendants submit evidence of their own injuries from the incident: notably, that Defendant Boynton had a ½ inch scratch to his right forearm and redness to his left cheek; that Defendant Kilburn had swelling to his right elbow and left shoulder and redness to his right lower jaw and a loose tooth; and that Defendants Smith and Tamer went out to Champlain Valley-Plattsburgh Hospital for further evaluation.  Defs.' 7.1 Statement at ¶¶ 21-26.

---

[4] Plaintiff also included James Rabideau as a Defendant in this action.  It was made clear at Plaintiff's Deposition that Rabideau was simply the operator of the video camera and did not participate in any other way in the alleged incident, and that it was "not [Plaintiff's] intention[]" to sue him.  Pl.'s Dep. Tr. at pp. 43-44.  Plaintiff gathered the names of the Defendants from the 'Unusual Incident Report."  *Id.*  Nonetheless, because this Court recommends dismissal of this action based on Plaintiff's failure to exhaust his administrative remedies, *see infra* Part II.B, we need not concern ourselves with which Defendants Plaintiff actually intended to sue.

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *accord F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994). The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d at 54 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "When a party has moved for summary judgment on the basis of asserted facts supported as required by [Federal Rule of Civil Procedure 56(e)] and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party." *Glazer v. Formica Corp.*, 964 F.2d 149, 154 (2d Cir. 1992).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial, and cannot rest merely on allegations or denials of the facts submitted by the movant. FED. R. CIV. P. 56(c); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994).

When considering a motion for summary judgment, the court must resolve all ambiguities

and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994); *accord*, *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). This liberal standard, however, does not excuse a *pro se* litigant from following the procedural formalities of summary judgment. *Showers v. Eastmond*, 2001 WL 527484, at *2 (S.D.N.Y. May 16, 2001).

## B. Exhaustion

The Prison Litigation Reform Act of 1996 ("PLRA") imposes several restrictive conditions on a prisoner's ability to bring a federal civil rights action. With regard to the issues before this Court, the PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (citations omitted). Further, proper exhaustion "entails both 'complet[ing] the administrative review process in accordance with the applicable procedural rules' and providing the 'level of detail

necessary in a grievance to comply with the grievance procedures.'" *Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011) (citing *Woodford v. Ngo*, 548 U.S. 81, 88 (2006) and *Jones v. Bock*, 549 U.S. 199, 218 (2007)).

Exhaustion of administrative remedies under the PLRA is an affirmative defense which must be raised and proven by the defendants. *Jenkins v. Haubert*, 179 F.3d 19, 28-29 (2d Cir. 1999) (noting that exhaustion of remedies is an affirmative defense); *Howard v. Goord*, 1999 WL 1288679, at *3 (E.D.N.Y. Dec. 28, 1999) (citations omitted) (noting that the burden remains with the defendants to prove that administrative remedies had not been exhausted). The party opposing the affirmative defense "may delay the ultimate determination as to its validity until trial by showing that there is a genuine issue of material fact to be determined." *Howard v. Goord*, 1999 WL 1288679 at *3 (citations omitted).

In New York State, the administrative remedy process consists of three steps. First, a grievance is submitted to the Inmate Grievance Review Committee ("IGRC"), a committee comprised of both inmates and facility employees.[5] N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5(b). The IGRC reviews and investigates the formal complaint and then issues a written determination. *Id.* Second, if the IGRC decision is appealed, the superintendent of the facility reviews the IGRC's determination and issues a decision. *Id.* at § 701.5(c). Finally, if the superintendent's decision is appealed, the Central Office Review Committee ("CORC") makes the final administrative determination. *Id.* at § 701.5(d). Only upon exhaustion of these three levels of review may a prisoner seek relief pursuant to § 1983 in federal court. *Bridgeforth v. Bartlett*, 686 F. Supp. 2d 238, 239 (W.D.N.Y. 2010) (citing, *inter alia*, *Porter v. Nussle*, 534 U.S. at 524); *see also Neal v. Goord*,

---

[5] The IGRC is a five-member body consisting of two voting inmates, two voting staff members, and a non-voting chairperson (who may be an inmate, staff member, or volunteer). N.Y. COMP. CODES R. & REGS. tit. 7, § 701.4.

267 F.3d 116, 121 (2d Cir. 2001), *overruled on other grounds by Porter v. Nussle*, 534 U.S. 516.

Here, Defendants have moved for Summary Judgment on Plaintiff's failure to exhaust the administrative remedy procedures regarding Plaintiff's claim of excessive force. Defendants state that while Plaintiff filed a grievance regarding the incident at Clinton Correctional Facility on May 12, 2009, which was denied by the Superintendent on June 2, 2009, Plaintiff failed to appeal that denial. *See* Dkt. No. 61-26, Defs.' Mem. of Law, at p. 9. In support, they offer the Declaration of Tara Brousseau, the Inmate Grievance Supervisor at Clinton Correctional Facility, who states that her investigation revealed that Plaintiff had not appealed his grievances to CORC. Dkt. No. 61-9, Tara Brousseau Decl., dated Feb. 3, 2012, at ¶ 40. Plaintiff, on the other hand, claims that he did "use[] the prison grievance procedure . . . and although he was given the 'run around' he followed every step given to him by prison official[s]." Pl.'s 7.1 Statement at ¶ 9. However, a review of the evidence clearly indicates that Plaintiff failed to exhaust his administrative remedies with respect to his assault allegation of May 3, 2009.

Defendants submit evidence that Plaintiff was provided a copy of the Superintendent's denial of his grievance on June 3, 2009. Brousseau Decl. at ¶ 29. Plaintiff denies that he received it on that date, but admits that he received a copy of the denial no later than June 17, 2009. *See* Dkt. No. 66, Pl.'s Resp. to Defs.' 7.1 Statement, at ¶ 30; *see also* Am. Compl. at ¶ 22. Regardless, the undisputed evidence shows that Plaintiff did not submit an appeal of the Superintendent's denial of his grievance to Clinton Correctional Facility. Brousseau Decl. at ¶ 32. Plaintiff claims that he did submit some form of correspondence, but he submitted it to Southport Correctional Facility ("Southport"), where he was transferred to and arrived at on June 23, 2009, instead of submitting an appeal directly to Clinton, as required by New York State Department of Corrections and

Community Supervision ("DOCCS") Directive 4040 of the Inmate Grievance Program. *See* Dkt. No. 58-2, Ex. G, Director of Inmate Grievance Program Bellamy Lt. to Pl., dated July 3, 2009, & Southport Inmate Grievance Program Supervisor Arbunzo Lt. to Pl., dated July 9, 2009 (both explaining to Plaintiff that he must submit his appeal directly to Clinton Correctional Facility, where his grievance was filed).  However, despite receiving these letters, Plaintiff did not file an appeal of his grievance to Clinton Correctional Facility at any time, and as such, we must find that Plaintiff failed to exhaust his administrative remedies as to his claims in this action.

Though exhaustion is mandatory, certain caveats apply wherein a prisoner's failure to exhaust may be excused: (1) when administrative remedies were not available to the prisoner, *Abney v. McGinnis*, 380 F.3d 663 (2d Cir. 2004); (2) when the defendants waive the defense by failing to raise or preserve it, *Johnson v. Testman*, 380 F.3d 691 (2d Cir. 2004), or acted in such a manner that they are estopped from raising it, *Ziemba v. Wezner*, 366 F.3d 161 (2d Cir. 2004); and (3) when special circumstances exist to justify the prisoner's failure to comply with the exhaustion requirement, *Giano v. Goord*, 380 F.3d 670 (2d Cir. 2004).  However, Plaintiff does not assert that any of these exclusions to the PLRA's exhaustion requirement apply, and we see nothing in the evidence that would implicate any of these scenarios.

Therefore, because the PLRA requires "proper exhaustion" – that is, "using all steps that the agency holds out, and doing so properly," we recommend that Plaintiff's claims be **dismissed** for a failure to exhaust.  *See Woodford v. Ngo*, 548 U.S. at 90.  When a prisoner fails to exhaust available administrative remedies, and the time permitted for pursuing such remedies has not expired, the complaint is ordinarily dismissed without prejudice thus allowing the prisoner to submit a grievance to the particular institution.  42 U.S.C. § 1997e(a); *Snider v. Melindez*, 199 F.3d 108,

111-12 (2d Cir. 1999); *see also Melo v. Combes*, 1998 WL 67667 (S.D.N.Y. Feb. 18, 1998); *Midgette v. Doe*, 1997 WL 634280, at *1 (S.D.N.Y. Oct. 15, 1997).  However, if the prisoner failed to exhaust administrative remedies which were available to him after the onset of conditions giving rise to his complaints, yet such remedies are no longer available, *i.e.*, prisoner was transferred to another institution or released from custody, then it is proper for the court to dismiss the complaint with prejudice because any attempts to exhaust would be futile.  *Berry v. Kerik*, 366 F.3d 85, 86 (2d Cir. 2004).

Here, Plaintiff has since been transferred to Auburn Correctional Facility and thus no longer has access to administrative remedies related to the claims in this Complaint available to him.  *See* New York State DOCCS, Inmate Population Information Search, *available at* http://nysdoccslookup.doccs.ny.us (last visited May 21, 2012, search for Department Identification Number ("DIN") 03-B-2345).  Accordingly, we recommend **dismissal** of his unexhausted claims **with prejudice** and without further consideration of the merits.  Because Plaintiff's action consists solely of unexhausted claims, we recommend **dismissal** of the case in its entirety.

### III.  CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Plaintiff's Motion for Summary Judgment (Dkt. No. 58) be **denied** and that Defendants' Cross-Motion for Summary Judgment (Dkt. No. 61) be **granted** and this case be **dismissed**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file

*-10-*

written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date:   June 12, 2012
        Albany, New York


Randolph F. Treece
U.S. Magistrate Judge

*-11-*