UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

AARON TOMPKINS,

                            Plaintiff,

   -against-                                        9:10-CV-1200 (LEK/RFT)

C.O. D. BEANE, *et al.*

                            Defendants.

## **DECISION and ORDER**

**I.   INTRODUCTION**

This matter comes before the Court following a Report-Recommendation filed on June 12, 2012 by the Honorable Randolph F. Treece, United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b) and L.R. 72.3(d) of the Northern District of New York.  Dkt. No. 67 ("Report-Rec."). After fourteen days from the service thereof, the Clerk has sent the entire file to the undersigned, including the Objections by *pro se* Plaintiff Aaron Tompkins ("Plaintiff"), which were filed on June 26, 2012.  Dkt. No. 68 ("Objections").

**II.  BACKGROUND**

On October 7, 2010, Plaintiff commenced this action *pro se* and *in forma pauperis*, seeking relief under 42 U.S.C. § 1983.  Dkt. No. 1 ("Complaint").  On November 3, 2010, Plaintiff filed his Amended Complaint, stating causes of action under the Eighth Amendment against a number of correctional officers at Clinton Correctional Facility ("Defendants").  Dkt. No. 6 ("Amended Complaint").  Plaintiff specifically alleged that on or about May 3, 2009 he was involved in an altercation with Defendants, who beat and injured him.  Id. at 5.  The Court assumes the parties' familiarity with the facts underlying Plaintiff's claim and recounts the facts here only to the extent

necessary to decide the Motions presently before the Court. For a more complete background, reference is made to Plaintiff's Statement of Undisputed Facts, submitted in accordance with Northern District of New York Local Rule 7.1, and to Defendants' Statement and Response thereto. Dkt. Nos. 58-2 ("Pl.'s Statement of Undisputed Facts") [hereinafter "Pl.'s 7.1 Statement"], 61-3 ("Defs.' Statement Pursuant to Rule 7.1(a)(3)") [hereinafter "Defs.' 7.1 Statement"].

On January 5, 2012, Plaintiff filed a Motion for summary judgment. Dkt. No. 58 ("Motion"). On February 3, 2012, Defendants responded to Plaintiff's Motion and filed a Cross-Motion for summary judgment. Dkt. No. 61 ("Cross-Motion"). Plaintiff subsequently filed a Response to the Cross-Motion. Dkt. No. 66. Presently before the Court are Plaintiff's Motion and Defendants' Cross-Motion.

### III.   STANDARD OF REVIEW

"A [district] judge . . . may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). The Court is to "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b). Where, however, an objecting "party makes only conclusory or general objections, or simply reiterates his original arguments, the Court reviews the report and recommendation only for clear error." Farid v. Bouey, 554 F. Supp. 2d 301, 307 (N.D.N.Y. 2008) (quoting McAllan v. Von Essen, 517 F. Supp. 2d 672, 679 (S.D.N.Y. 2007)) (citations and quotations omitted); see also Brown v. Peters, No. 95-CV-1641, 1997 WL 599355, at *2-3 (N.D.N.Y. Sept. 22, 1997). The Court has considered all Objections, has reviewed the record, and has determined that the Report-Recommendation should be approved and adopted in part for the reasons stated herein. Because the Court does not adopt the recommendation to grant

Defendants' Motion for summary judgment on exhaustion grounds, however, the Court must also review the other issues raised in the Motion and Cross-Motion *de novo*.[1]

## IV. DISCUSSION

### A. Objections

In his Objections, Plaintiff argues: (1) that Judge Treece erred in asserting that Plaintiff did not address Defendant's claim that Plaintiff placed an unknown object in his mouth after striking Officer Kilburn in the face; (2) that Judge Treece erred in finding that Plaintiff failed to exhaust – or to otherwise show an exception to the requirement to exhaust – his administrative remedies with respect to the assault allegation; and (3) that Judge Treece erred in recommending that Plaintiff's Motion for summary judgment be denied and that Defendant's Motion for summary judgment be granted and the case be dismissed. Obj. at 2.

#### *1. Plaintiff's Denial of Concealing Unknown Object*

As to Plaintiff's first objection, Plaintiff focuses on Footnote 2 in the Background section of the Report-Recommendation, asserting that – counter to Judge Treece's characterization – Plaintiff did address the allegation that he "swallow[ed] [a] foreign object" "after the incident." Obj. at 1. Plaintiff is correct that in his rule 7.1 Statement of Facts he addressed this allegation when he "den[ied] placing anything in [his] mouth." Response at 16.[2] However, the identification of a minor inaccuracy in the Magistrate Judge's account of the case is not necessarily sufficient to lead

---

[1] Because the Report-Recommendation finds that Plaintiff has failed to exhaust his administrative remedies and recommends that his claims be dismissed with prejudice on that basis, it provides no recommendation on the merits of the other arguments raised by parties in their Motions.

[2] In referring to specific sections of the Response, the Court uses the numbers entered electronically by the Clerk's office as opposed to the handwritten numbers.

3

the Court to reject the Report-Recommendation. Courts have the ability "to correct a clerical mistake or mistake arising whenever one is found in a judgment, order, or other part of the record." FED. R. CIV. P. 60(a). "The court at every stage of the of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties." FED. R. CIV. P. 61; McDonough Power Equip., Inc. v. Greenwood, 464 U.S. 548, 553 (1984). Here, the Court recognizes that Plaintiff did in fact address the allegation, but this error is one that neither factored into Judge Treece's recommendation nor is relevant to Plaintiffs' substantial rights. Reviewing the instant Motions *de novo*, the Court does not find that Plaintiff's denial in his 7.1 Statement of Facts affects the Court's analysis. Therefore, while Plaintiff's objection is noted, the error in the Report-Recommendation has no bearing on the disposition of the Motions before the Court.

      2. *Exhaustion*

Plaintiff's second stated objection is to Judge Treece's "finding that [Plainitiff] did not assert any caveat that would exclude him from proper exhaustion." Obj. at 1. Under the Prison Litigation Reform Act of 1996 ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C.§ 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002) (citations omitted). Satisfying the exhaustion requirement "entails both 'complet[ing] the administrative review process in accordance with the applicable procedural rules' and providing the 'level of detail necessary in a grievance to comply with the grievance procedures.'" Amador v.

Andrews, 655 F.3d 89, 96 (2d Cir. 2011) (citing Woodford v. Ngo, 548 U.S. 81, 88 (2006) and Jones v. Bock, 549 U.S. 199, 218 (2007)). However, a court may excuse a failure to exhaust if: (1) administrative remedies were not available to the prisoner; Abney v. McGinnis, 380 F.3d 663 (2d Cir. 2004); (2) a defendant waives the defense by failing to raise or preserve it or acted in such a manner that they are estopped from raising it; Johnson v. Testman, 380 F.3d 691 (2d Cir. 2004); Ziemba v. Wezner, 366 F.3d 161 (2d Cir. 2004); or (3) if special circumstances exist to justify the prisoner's failure to comply with the exhaustion requirement. Giano v. Goord, 380 F.3d 670 (2d Cir. 2004). In this case, there is no question but that administrative remedies were available and no suggestion of waiver or estoppel based on Defendants's conduct. Further, Judge Treece stated in his Report-Recommendation that Plaintiff had failed to assert any caveat and had therefore not argued that special circumstances applied. Report-Rec. at 9.

 As in the case of his first objection, however, Plaintiff contends that the Report-Recommendation mischaracterizes Plaintiff's position and disregards his arguments. In arguing that he actually had asserted an exception to the exhaustion requirements, Plaintiff makes reference to his Response in Opposition to Defendant's Cross Motion for Summary Judgment. Resp. at 16. Specifically, Plaintiff asserts that he did not receive the decision denying his initial grievance until shortly before he was moved to Southport Correction Facility and did not have time to file an appeal at Clinton before the move. Id. Plaintiff asserts that he filed an appeal at Southport, as instructed, but he then was advised to file the appeal with Clinton directly. Id. at 17. Plaintiff did not file an appeal with Clinton directly but claims that he "rel[ied] on reasonable interpretation" of a letter from the Inmate Grievance Program, instructing him to file the appeal at "the facility." Dkt. No. 58-2 at 48. While Plaintiff was actually required to file the appeal at Clinton, Plaintiff argues that he

believed that "the facility" referred to the facility – Southport – at which he was housed when he received the letter. Resp. at 16-18. Plaintiff claims that he did ultimately file an appeal as instructed, and when Plaintiff inquired regarding the status of his appeal in September, he was told there was no record of appeal and that – because appeals are accepted no more than forty five days after the superintendent's response – no appeal would be accepted. Dkt. No. 58-2 at 53. In his Response, Plaintiff argues that based on his account of his attempts to appeal, "special circumstances exist and have been plausibly alleged to justify plaintiff's failure to comply with the applicable administrative procedural requirements." Resp. at 17.

Like his first objection, then Plaintiff's second objection correctly identifies a point on which the Report-Recommendation neglected Plaintiff's arguments. Unlike the minor factual inconsistency noted in the previous objection, however, the Report-Recommendation's statement that Plaintiff had not claimed that caveat to the exhaustion requirement applied in his case is one that "affect[s] the substantial rights of the parties" and therefore is one that requires the Court's attention. FED. R. CIV. P. 61; McDonough Power Equip., Inc., 464 U.S. at 553.

In both his Response and his Objections, Plaintiff has argued that "special circumstances exist in this case, because: (1) the DOCCS grievance procedure was complicated; and (2) he made an objectively reasonable, good faith effort to follow the grievance procedure and exhaust his administrative remedies. See Obj.; Resp. at 17. Plaintiff cites the Second Circuit's holdings in Giano and Hemphill v. New York, 380 F.3d 680 (2d Cir. 2004) for the proposition that "reliance on a reasonable interpretation of prison grievance regulations may justify an inmate's failure to follow procedural rules to the letter." Resp. at 17 (quoting Hemphill, 380 F.3d at 690). In their Cross-Motion for summary judgment, on the other hand, Defendants rely on the Supreme court's holding

in Woodford v. Ngo, 548 U.S. 81 (2006) and contend that the "PLRA requires 'proper exhaustion' of available remedies and that "'[p]roper exhaustion' requires a plaintiff to procedurally exhaust his or her claims by 'compl[ying] with the system's critical procedural rules.'" Cross-Mot. at 6-7 (quoting Woodford, 548 U.S. at 94-95).

Other courts in this Circuit have identified the potential tension between Woodford and the Giano/Hemphill line of cases. See, e.g., Murray v. Palmer, No. 9:03-CV-1010, 2010 WL 1235591, at *3 n.7 (N.D.N.Y. Mar. 31, 2010) ("The Court recognizes that the Supreme Court's decision in Woodford v. Ngo may have changed the law regarding possible exceptions to the exhaustion requirement") (internal citation omitted); Winston v. Woodward, No. 05 Civ. 3385, 2008 WL 2263191, at *6 (S.D.N.Y. May 30, 2008); Chavis v. Goord, No. 00 Civ. 1418, 2007 WL 2903950, at *9 n.8 (N.D.N.Y. Oct. 1, 2007) (Kahn, J.); Lawyer v. Gatto, No. 03 Civ. 7577, 2007 WL 549440, at *4 n.4 (S.D.N.Y. Feb. 21, 2007). In the absence of a clear statement by the Second Circuit, however, the Court joins other district courts in finding that the caveats to the exhaustion requirement identified in Giano and Hemphill may in some cases still be available to prisoner plaintiffs. See, e.g., Murray, 2010 WL 1235591, at *3 n.7 ("It is unclear whether Woodford has overruled any decisions that recognize 'exceptions' to the exhaustion requirement. Out of special solicitude to Plaintiff, the Court will assume that Woodford has not overruled the Second Circuit's Giano – Testman line of cases"); Winston v. Woodward, 2008 WL 2263191, at *6 ("this Court adheres to clear Second Circuit authority, as well as the approach followed by other district courts in this Circuit and applies the Hemphill three-part inquiry to Plaintiff's exhaustion claims"); Sloane v. Mazzuca, No. 04 Civ. 8266, 2006 WL 3096031, at *5 (S.D.N.Y. Oct. 31, 2006) ("The Second Circuit has not addressed how [Hemphill]'s three-part approach . . . has been affected by Woodford"

7

and "[u]ntil such time as the Court of Appeals considers the impact of Woodford, if any, on its prior rulings, this Court must follow the law of the Second Circuit. The Court will therefore apply the current law of this circuit to the exhaustion claims.").

In this case it appears that Plaintiff made a good faith effort to pursue administrative remedies and exhaust such remedies prior to instigating federal litigation. Based on the uncontested evidence, it appears that Plaintiff misdirected filings and misunderstood the correct facilities at which to make certain inquiries and complaints. That being said, Plaintiff was responsive to notices from personnel at the correctional facilities informing him of his errors. Additionally, Plaintiff contends that he ultimately did file a timely appeal as instructed at Clinton. Resp. at 17-18. He has further submitted to the Court letters that he sent in September of 2010 inquiring as to the status of his appeal and responses from correctional facility personnel denying that such appeals were received and informing him that he could no longer appeal. Dkt. No. 58-2 at 50-53. While Defendants have submitted the Declaration of Tara Brousseau, the Inmate Grievance Supervisor at Clinton Correctional Facility, stating that her investigation revealed that Plaintiff had not appealed his grievances, Dkt. No. 61-9 ¶ 40, the Court concludes that Plaintiff has alleged facts that – if true – demonstrate that he made reasonable efforts to exhaust his administrative remedy and file his appeal.[3] See Giano, 380 F.3d at 678 ("We need not, and hence should not, today attempt any broad

---

[3] In his Report-Recommendation, Judge Treece states that "despite receiving these letters, Plaintiff did not file an appeal of his grievance to Clinton Correctional Facility at any time, and as such, we must find that Plaintiff failed to exhaust his administrative remedies as to his claims in this action." Report-Rec. at 9. While the Court notes the evidence that Defendant has offered in support of this contention, Plaintiff has also offered evidence to suggest that he did in fact file (or at least attempt to file) an appeal at Clinton. Given that this disagreement is a factual one, the Court concludes that it would be improper to grant summary judgment and dismiss Plaintiff's case on this contested issue.

statement of what constitutes justification. It is enough for us to recognize that Giano's complaint alleges facts that, if true, suffice to justify his failure to file an ordinary grievance."). Therefore, the Court concludes that special circumstances of Plaintiff's unsuccessful appeal should prevent the Court from granting Defendants summary judgment on grounds of exhaustion.[4]

### 3. General Objection

Plaintiff's third objection is simply a general objection to the Report-Recommendation and its conclusions. Conclusory or general objections are reviewed only for clear error. Farid, 554 F. Supp. 2d at 307. Because Plaintiff's objection to Judge Treece's Report-Recommendation as a whole falls into this category, the Court has reviewed the other portions of the Report-Recommendation and has found no clear error.

**B. Defendants' Cross-Motion for Summary Judgment**

Because the Court does not adopt Judge Treece's recommendation that all of Plaintiff's claims be dismissed on grounds of failure to exhaust, the Court must address the other arguments in Defendants' Cross-Motion *de novo*. Defendants argue that: (1) the force used by Defendants was reasonable; (2) Plaintiff's claims against Defendants in their official capacity are barred by the

---

[4] The Court does not hold that any claim by a prisoner plaintiff that he or she had filed an appeal would be sufficient to defeat summary judgment on exhaustion grounds when a correctional facility had never received such an appeal. Such a rule would seem to invite abuse and would clearly contravene the purposes of the PLRA. Cf. Giano, 380 F.3d at 677 ("we believe that prisoners may not circumvent the exhaustion requirement simply by waiting to bring a Section 1983 action until their administrative complaints are time-barred. Such a rule would not comport with the purposes of the PLRA, which sought to 'invigorate[ ] the exhaustion prescription'") (quoting Porter v. Nussle, 534 U.S. 516, 524 (2002)). In this case, however, Plaintiff has provided copies of letters that he sent to correctional facilities inquiring about the status of his appeal. Dkt. No. 58-2 at 50-51. Further, these letters predate the filing of this lawsuit and the introduction of the exhaustion issue, leading the Court to conclude that they represent a good faith effort to pursue his grievance and inquire as to his appeal, as opposed to an effort to conceal a failure to exhaust and to confuse the record of his appeal.

Eleventh Amendment; and (3) Plaintiff has failed to sustain his burden, and his Motion for summary judgment should be denied. See generally Cross-Mot.

### 1. Reasonableness of Force

To state a claim for cruel and unusual punishment in violation of the Eighth Amendment, a prisoner must "allege[ ] facts from which it could be inferred that prison officials subjected him to excessive force, and did so maliciously and sadistically." Sims v. Artuz, 230 F.3d 14, 22 (2d Cir. 2000). A plaintiff must show: (1) that the alleged use of force was "objectively sufficiently serious or harmful enough," United States v. Walsh, 194 F.3d 37, 50 (2d Cir. 1999); and (2) that the force was applied "maliciously and sadistically to cause harm" rather than "in a good-faith effort to maintain or restore discipline." Hudson v. McMillian, 503 U.S. 1, 7 (1992).

A corrections worker who is present while an assault upon an inmate occurs but does not participate in the assault may still bear responsibility for the inmate's constitutional deprivation. See Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994). To establish liability under a failure to intervene theory, "a plaintiff must prove the use of excessive force by someone other than the individual and that the defendant under consideration: 1) possessed actual knowledge of the use by another corrections officer of excessive force; 2) had a realistic opportunity to intervene and prevent the harm from occurring; and 3) nonetheless disregarded that risk by intentionally refusing or failing to take reasonable measures to end the use of excessive force." Lewis v. Mollette, 752 F. Supp. 2d 233, 244 (N.D.N.Y. 2010) (citations and internal quotation marks omitted).

Here, Defendants contend that "[t]he incident in our case is well documented and was fully investigated" and that the "uncontested" evidence shows that Defendants used reasonable force. Cross-Mot. at 5-6. As Plaintiff argues in his Response, however, the parties' accounts of the

confrontation differ substantially. Resp. at 13-15. While the Court notes that Plaintiff has conceded that he bit Defendants and used force against them, Plaintiff also claims that Defendants instigated the struggle and that he resorted to violence in an effort to defend himself. See generally id.; Compl.; Mot. Given that there is dispute as to what precipitated the confrontation, the Court concludes that genuine issues of material fact persist, making summary judgment on this issue inappropriate.[5]

However, because Defendants Raymond Furnia ("Furnia") and James Rabideau ("Rabideau") are not alleged to have been involved in the assault and because Plaintiff has failed to respond to Defendants on this point and make an affirmative case for their liability under a failure to intervene theory, the Court grants summary judgment as to Defendants Furnia and Rabideau. Plaintiff has failed to raise a genuine issue of material fact or to provide a legal basis for Defendants Furnia's and Rabideau's liability. Therefore, the Court grants summary judgment as to these two Defendants.

### 2. Eleventh Amendment

"[N]either a State nor its officials acting in their official capacities are 'persons' under §

---

[5] The Court notes that Defendants also raise an argument that any injury to Plaintiff was *de minimis* or at least demonstrates that the force used was not greater than was required to subdue Plaintiff. First, the Court cannot conclude that Plaintiff's injuries – assuming his factual allegations are true – are so insignificant as to require his claims to fail as a matter of law. See Alhaj v. McCarthy, No. 11 Civ. 9049, 2012 WL 2929957, at *2 (S.D.N.Y. July 18, 2012) ( Warren v. Purcell, No. 03 Civ. 8736, 2004 WL 1970642, at *7 (S.D.N.Y. Sept. 3, 2004) ("in the case of excessive use of force by prison guards, the objective component does not require any particular 'quantity of injury,' for '[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency are always violated.'") (quoting Hudson, 503 U.S. at 9). Second, given that factual issues persist as to what precipitated the use of force, the Court cannot conclude as a matter of law that a certain amount of force would have been reasonable and that certain injuries might or might not demonstrate that such a quantity of force was applied.

1983." Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989).  Further, a claim for damages against state officials in their official capacities is considered to be a claim against the State and is therefore barred by the Eleventh Amendment.  See Kentucky v. Graham, 473 U.S. 159, 169 (1985); Davis v. New York, 316 F.3d 93, 101 (2d Cir. 2002).  Plaintiff's claims against corrections officers in their official capacities are therefore barred by the Eleventh Amendment.  See, e.g., Page v. Vermont Dept. of Corrections, No. 5:11-cv-187, 2012 WL 2153438, at *2 (D.Vt. June 13, 2012) (holding that the Eleventh Amendment bars suits against correctional workers in their official capacities).  Salvodon v. New York, No. 11 Civ. 2190, 2012 WL 1694613, at *3 (S.D.N.Y. May 14, 2012) (same).  As a result, the Court grants Defendants' Cross-Motion as to these claims and dismisses all claims against DOCCS employees in their official capacities and dismisses all such claims with prejudice.

*3. Plaintiff's Motion for Summary Judgment*

As discussed in regard to Defendants' Cross-Motion for summary judgment, the Court concludes that there are genuine issues of material fact as to the degree of force used and the nature of the alleged confrontation between Plaintiff and Defendant corrections officers.  Therefore, the Court cannot grant summary judgment and conclude as a matter of law that "defendants used excessive force against the plaintiff in violation of [the] cruel and unusual punishments clause under the [E]ighth [A]mendment in the [U.S.] [C]onstitution."  Mot. at 4.  Because Plaintiff has failed to meet his burden, the Court denies his Motion for summary judgment.

**V. CONCLUSION**

Accordingly, it is hereby:

**ORDERED**, that the Report-Recommendation (Dkt. No. 67) is **APPROVED** and

**ADOPTED in part** in accordance with this Decision and Order; and it is further

ORDERED, that Plaintiff's Motion for summary judgment (Dkt. No. 58) is **DENIED**; and it is further

ORDERED, that Defendants' Cross-Motion for summary judgment (Dkt. No. 61) is **GRANTED in part** and **DENIED in part** in accordance with this Decision and Order; and it is further

ORDERED, that all claims against Defendants Raymond Furnia and James Rabideau are **DISMISSED with prejudice**; and it is further

ORDERED, that all claims against Defendants in their official capacities are **DISMISSED with prejudice**; and it is further

ORDERED, that the Clerk serve a copy of this Order on all parties.

**IT IS SO ORDERED**.

DATED:     July 30, 2012
           Albany, New York

Lawrence E. Kahn
U.S. District Judge