# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

AARON TOMPKINS,

Plaintiff,

- v -

Civ. No. 9:10-CV-1200
(LEK/RFT)

C.O. D. BEANE; MICHAEL J. BOYNTON;
STEVE E. JAQUISH; JOHNNY KILBURN;
C. LAWFER; WILLIAM J. NELSON;
TRAVIS R. SMITH; EVAN R. TAMER,
*sued in their individual and official capacities*,

Defendants.

**APPEARANCES:**

BURKE, SCOLAMIERO LAW FIRM
*Assigned Attorney* for Plaintiff
7 Washington Square
Albany, New York 12212

HON. ERIC T. SCHNEIDERMAN
New York State Attorney General
*Attorney for Defendants*
The Capitol
Albany, New York 12224

**OF COUNSEL:**

THOMAS J. MORTATI, ESQ.

COLLEEN D. GALLIGAN ESQ.
KELLY MUNKWITZ, ESQ.
Assistant Attorney General

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER

*Pro se* Plaintiff Aaron Tompkins brings this civil rights action, pursuant to 42 U.S.C. § 1983, alleging that his Eighth Amendment rights were violated by the Defendants when they subjected him to excessive force. Dkt. No. 6, Am. Compl. In

answering the Amended Complaint, the Defendants pled, *inter alia*, the affirmative defense of failure to exhaust administrative remedies. Dkt. Nos. 20 & 38, Answers at ¶ 16. The issue of exhaustion of administrative remedies was raised by the Defendants in their Cross-Motion for Summary Judgment under Federal Rule of Civil Procedure 56(b), Dkt. No. 61, which was fully examined in a Report and Recommendation issued by this Court, Dkt. No. 67, and a Decision and Order, dated July 30, 2012, issued by the Honorable Lawrence E. Kahn, Senior United States District Judge, Dkt. No. 69. Judge Kahn's Decision and Order approved and adopted in part this Court's Report and Recommendation. *Id*. at pp. 12-13. Judge Kahn did not adopt this Court's Recommendation regarding the exhaustion of administrative remedies and instead found that there was a question of fact as to whether Tompkins had exhausted his administrative remedies.

Where this Court found that Tompkins had not properly exhausted his administrative remedies nor adequately stated a caveat or excuse to the mandatory requirement of exhaustion, and was foreclosed by the fact that his ability to pursue such remedies had expired, Dkt. No. 67 at pp 9-10, Judge Kahn concluded otherwise. Based upon the record before the District Judge, Judge Kahn noted that it appeared Tompkins misdirected the filing of his appeal and misunderstood the correct correctional facility to which he must make certain inquiries, complaint, and,

ultimately, his appeal of the denial of his grievance; in Judge Kahn's view, this may have constituted "a good faith effort to pursue administrative remedies and exhaust such remedies." Dkt. No. 69 at p. 8. Judge Kahn further concluded that while Defendants had submitted declarations averring that Tompkins had not appealed his grievances, "[he] has alleged facts that - if true - demonstrate that he made reasonable efforts to exhaust his administrative remedy and file his appeal," which consequently would constitute special circumstances; accordingly, this presented a genuine and contested issue of fact. *Id.* at pp. 8-9 & n.3.

After this Court noted that this matter was trial ready, Dkt. No. 79, on June 10, 2013, Judge Kahn granted Defendants' Letter-Motion seeking a hearing to resolve the exhaustion of administrative remedies issue, and referred this evidentiary hearing to this Court, Dkt. No. 83. On July 25, 2013, an Evidentiary Hearing was held, and at the conclusion, the Court granted the parties an opportunity to submit written summations, which would invariably include proposed findings of facts and conclusions of law. *See* Dkt. Nos. 98, Hr'g Tr.; 99, Pl.'s Mem. of Law, dated Aug. 30, 2013; & 101, Defs.' Mem. of Law, dated Aug. 30, 2013.

## I.  THE LAW OF EXHAUSTION

### A.  Governing Law

The Prison Litigation Reform Act of 1996 ("PLRA") imposes several restrictive

conditions on a prisoner's ability to bring a federal civil rights action. With regard to the issues before this Court, the PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (citations omitted). Further, proper exhaustion "entails both 'complet[ing] the administrative review process in accordance with the applicable procedural rules' . . . and providing the 'level of detail necessary in a grievance to comply with the grievance procedures.'" *Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011) (quoting *Woodford v. Ngo*, 548 U.S. 81, 88 (2006) and *Jones v. Bock*, 549 U.S. 199, 218 (2007)).

Exhaustion of administrative remedies under the PLRA is an affirmative defense which must be raised and proven by the defendants. *Jenkins v. Haubert*, 179 F.3d 19, 28-29 (2d Cir. 1999) (noting that exhaustion of remedies is an affirmative defense); *Howard v. Goord*, 1999 WL 1288679, at *3 (E.D.N.Y. Dec. 28, 1999) (citations omitted) (noting that the burden remains with the defendants to prove that

*-4-*

administrative remedies had not been exhausted).  When a prisoner fails to exhaust available administrative remedies, and the time permitted for pursuing such remedies has not expired, the complaint is ordinarily dismissed without prejudice thus allowing the prisoner to submit a grievance to the particular institution.  42 U.S.C. § 1997e(a); *Snider v. Melindez*, 199 F.3d 108, 111-12 (2d Cir. 1999); *see also Melo v. Combes*, 1998 WL 67667 (S.D.N.Y. Feb. 18, 1998); *Midgette v. Doe*, 1997 WL 634280, at *1 (S.D.N.Y. Oct. 15, 1997).  However, if the prisoner failed to exhaust administrative remedies which were available to him after the onset of conditions giving rise to his complaints, yet such remedies are no longer available, *i.e.*, prisoner was transferred to another institution or released from custody, then it is proper for the court to dismiss the complaint with prejudice because any attempts to exhaust would be futile. *Berry v. Kerik*, 366 F.3d 85, 86 (2d Cir. 2004).

Though exhaustion is mandatory, certain caveats apply wherein a prisoner's failure to exhaust may be excused: (1) when administrative remedies were not available to the prisoner, *Abney v. McGinnis*, 380 F.3d 663 (2d Cir. 2004); (2) when the defendants waive the defense by failing to raise or preserve it, *Johnson v. Testman*, 380 F.3d 691 (2d Cir. 2004), or acted in such a manner that they are estopped from raising it, *Ziemba v. Wezner*, 366 F.3d 161 (2d Cir. 2004); and (3) when special circumstances exist to justify the prisoner's failure to comply with the exhaustion

requirement, *Giano v. Goord*, 380 F.3d 670 (2d Cir. 2004).

**B. Department of Corrections and Community Supervision's Administrative Remedy Process**

In New York State, the general administrative remedy process consists of three steps, which is initiated by filing a grievance with the Inmate Grievance Review Committee. N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5(b).[1] However, where the grievance involves employee harassment or excessive force, as alleged by Tompkins, the administrative remedy process is expedited. *Id*. at §701.8. In this instance, a grievance is filed directly with the superintendent of the correctional facility who is required to order an investigation and render a decision on the grievance within twenty-five (25) days. *Id*. at § 701.8(a)-(f). Should the inmate-grievant wish to appeal the superintendent's decision to the Central Office Review Committee ("C.O.R.C."), an appeal is filed with the inmate grievance clerk within seven (7) days of receipt of the superintendent's response. *Id*. at §§ 701.8(h), & 701.5(d). In perfecting an appeal, the inmate must complete and sign Form #2133 and submit it to the grievance clerk within the requisite time period. *Id*. at § 701.5(d). The grievance

---

[1] The particular Rules and Regulations are commonly known as Directive 4040, which is fully revealed as Defendants' Exhibit 1.

Additionally, each of the grievance steps set forth in Directive 4040 and enumerated in this sections were testified to by Karen Bellamy, Director of Central Office Review Committee ("C.O.R.C."), and Tara Brosseau, Clinton Correctional Facility Inmate Grievance Supervisor ("IGS"), during the Evidentiary Hearing. Dkt. No. 98, Hr'g Tr., at pp. 8-14, 29-34, & 50-53.

clerk will forward the appeal and all related reports and documents to C.O.R.C. for its determination, which is the final step in the grievance process. *Id*. at §§ 701.5(d)(2)(ii) & (3)(ii); Hr'g Tr. at p. 13 (noting that once C.O.R.C. has decided the appeal it is the final determination). In the event that an inmate has been transferred to another facility, he is required to mail the signed appeal back to the Inmate Grievance Program ("IGP") supervisor at the facility where the grievance was originally filed. N.Y. COMP. CODES R. & REGS. tit. 7 § 701.6(h)(2). Noteworthy, "[a]n inmate may present or appeal a grievance unaided, or may be advised or assisted by staff . . . or another inmate[.]" *Id*. at § 701.6(a). If the grieving inmate is keeplocked or in the Special Housing Unit (SHU), inmate advisors may be limited at the superintendent's discretion. *Id*.[2] Unless compromised by any of the caveats listed above, only upon exhaustion of this level of review may a prisoner seek relief pursuant to § 1983 in federal court. *Bridgeforth v. Bartlett*, 686 F. Supp. 2d 238, 239 (W.D.N.Y. 2010) (citing, *inter alia*, *Porter v. Nussle*, 534 U.S. at 524); *see also Neal v. Goord*, 267 F.3d 116, 121 (2d Cir. 2001), *overruled on other grounds by Porter v. Nussle*, 534 U.S. 516.

---

[2] Both Ms. Bellamy and Ms. Brosseau testified that inmates are entitled to assistance in filing their grievances or appeals. Ms. Bellamy declares that in addition to assistance from either inmate or staff, inmates, upon entry into prison custody, are educated as to how to file a grievance and/or an appeal. Hr'g Tr. at pp. 14-15, 28, & 41. Whereas Ms. Brosseau further explains that if an inmate is confined in the Special Housing Unit (SHU), staff who make weekly rounds are available to assist him in pursuing his grievance or appeal. *Id*. at pp. 47-48.

## II. EVIDENTIARY HEARING

### A. The Burden of Proof

In conducting this Hearing, a certain three-prong regimen, at least within the

Second Circuit, must be followed:

> Depending on the inmate's explanation for the alleged failure to exhaust, the court must ask whether administrative remedies were in fact available to the prisoner. The court should also inquire as to whether the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it, or whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense. If the court finds that administrative remedies were available to the plaintiff, and that the defendants are not estopped and have not forfeited their non-exhaustion defense, but that the plaintiff nevertheless did not exhaust available remedies, the court should consider whether special circumstances have been plausibly alleged that justify the prisoner's failure to comply with administrative procedural requirements.

*Macias v. Zenk,* 495 F.3d 37, 41 (2d Cir. 2007) (quoting *Hemphill v. New York,* 380 F.3d 680, 686 (2d Cir. 2004)).[3]

In following the *Hemphill* analysis, the ultimate burden of proof rests with the

defendants, notwithstanding that the plaintiff bears the burden of production as to

estoppel and special circumstances. *Bailey v. Fortier*, 2012 WL 6935254, at *5

(N.D.N.Y. Oct. 4, 2012) (surveying cases).

---

[3] The viability of this framework has been questioned after the decision in *Woodford v. Ngo*, 548 U.S. 81 (2006). *Amador v. Andrews*, 655 F.3d 89, 102 (2d Cir. 2011) (citations omitted). It appears that *Woodford* may have made the survival of the doctrines of estoppel and special circumstances dubious. *Id*. at 102. And yet, the Second Circuit has declined, on several occasions, to consider whether *Woodford* has nullified the Circuit's three-part analysis, leaving courts within the Circuit to conclude that this procedure remains in effect. *Id*. at 103.

## B. The Hearing

The availability of administrative remedies was never at issue in this case. Dkt. Nos. 98, Hr'g Tr., at pp. 8-14, 29-34, & 50-53; Ex. D-1, DOCCS Directive 4040. In fact, Tompkins did not interject any fact that would challenge this finding nor contest the existence of a remedy. Nor was there an issue regarding estoppel, that is Defendants forfeiting their affirmative defense or inhibiting Tompkins from exhausting his administrative remedies. The crux of the fact-finding revolves around whether Tompkins availed himself of the proper exhaustion process or if special circumstances excused his failure to exhaust administrative remedies.

An incident that occurred at Clinton Correctional Facility ("CCF") on May 3, 2009, wherein Tompkins alleges that he was assaulted, triggered the filing of a grievance with the Superintendent on May 12, 2009. Ex. D-2 at p. 1. Consistent with Directive 4040, the Superintendent had prison personnel conduct an investigation, while, in the interim, Tompkins was placed in SHU for disciplinary reasons related to the incident. *Id*. at pp. 3-18. Upon the conclusion of the investigation, on June 3, 2009, the Superintendent issued his Denial Response, Form #2133, which principally advised Tompkins that his grievance was denied and of his right to appeal the denial. *Id*. at p. 3. The appeal statement states that "[i]f you wish to refer the above decision of the Superintendent, please sign below and return this copy to your Inmate

Grievance clerk. You have seven (7) calendar days from receipt of this notice to file your appeal. Please state why you are appealing this decision to C.O.R.C." *Id.*[4] Consistent with CCF's procedure, which conforms with Directive 4040, the Superintendent's Denial Response was received and entered into a database by Tara Brosseau, CCF's IGS that very same day. Hr'g Tr. at pp. 46, & 48-52; Exs. D-2 & D-3. Additionally, pursuant to Brosseau's recollection and the prison records, Ex. D-3, the Superintendent's Denial Response was mailed to Tompkins on the exact same day. Hr'g Tr. at p. 52. Brosseau placed the Denial Response into the SHU mail bag, but she could neither vouch for nor confirm who made the delivery and when it was received by Tompkins. *Id.* at pp. 63-64. Nor could she dismiss the notion that it could have gotten lost or delivered belatedly. *Id.* at p. 64. Assuming that Tompkins was served on June 3, and calculating that he would have seven days to return his Appeal Statement to the IGS, his appeal time would have expired on June 10, 2009. *Id.* at p. 53.

Tompkins's testimony contravenes the June 3 delivery date. Tompkins avers that he received the Superintendent's Denial Response and Appeal Notice on June 17, 2009, the day before he was packed up to be transported to another facility, which

---

[4] Tara Brosseau, CCF's IGS, explains that an inmate is provided two copies of the Superintendent's response: one copy to be executed and returned to her and the second to be kept by the inmate for record keeping purposes. Hr'g Tr., at p. 46.

eventually would be Southport Correctional Facility ("Southport"). *Id*. at pp. 82-83.

As he further explicates, on the following day, June 18, 2009, his belongings, including mail and legal papers, were packed into "draft bags" for his transport to another correctional facility, and he was placed on a bus the next day, June 19, 2009. *Id*. at pp. 83-84. His itinerary took him from Clinton to Downstate Correctional Facility (Downstate), eventually arriving at Southport on June 23, 2009. *Id*. at pp. 83-84, 101, & 106; Ex. D-9, Pl.'s Prison Chronology. Tompkins did not have access to his belongings while in transit or at Downstate, and did not file his Appeal until June 24, 2009, the day after he arrived at Southport. Hr'g Tr. at p. 85.

Prior to these events, Tompkins had filed neither a grievance nor appeal. *Id*. at p. 83. Nor had Tompkins read Directive 4040 or sought assistance on his Appeal prior to his departure from CCF or during his stint at Southport. *Id*. at pp. 87, 105, & 108. Relying upon his independent understanding[5] and interpretation of Form #2133 and the instructions therein, Tompkin believed that his Appeal must be filed directly with C.O.R.C., notwithstanding the instruction to return it to "your Inmate Grievance clerk," and the instructions contained within Directive 4040. Exs. D-1 & D-2. Instead, Tompkins read the instruction literally - "Please state why you are appealing

---

[5] Contributing to Tompkins's understanding was the instructive chatter among inmates as to how to pursue filing a grievance and an appeal. Hr'g Tr. at p. 109 ("Just in prison and hearing things that go around with grievances.").

this decision to C.O.R.C." Hr'g Tr. at pp. 85, 87, & 114. Tompkins avers that he

forwarded directly to C.O.R.C. the Form #2133, a hand-written Letter, his grievance,

and medical records. *Id*. at pp. 85-86, 91, 100, 104, & 114; Exs. P-1, Pl.'s Lt., dated

June 24, 2008 (sic),[6] & Ex. D-11, Appeal Statement, date stamped June 29, 2009.

Whereas the Appeal Form #2133 is unsigned, Ex. D-11, the June 24 Letter is signed

with an explanation as to why he is appealing, Ex. P-1 and Hr'g Tr. at p. 110,

Tompkins writes that he was subjected to excessive force that caused him multiple

injuries. Ex. P-1. Under Tompkins's calculations, accepting that he received the

Superintendent's Denial Response on June 17, 2009, filing his Appeal with C.O.R.C.

by June 24, 2009, would be timely.

On June 29, 2009, Karen Bellamy, Director of C.O.R.C. received Tompkins's

"undated correspondence." Hr'g Tr. at p. 18; Ex. D-11, Form #2133, date stamped

June 29, 2009. Bellamy recalls receiving Tompkins's unsigned Appeal, Form #2133,

Ex. D-11, but not his handwritten Letter, Ex. P-1. Hr'g Tr. at p. 24 (noting that she

did not recall "what exactly it was that [she] received from Mr. Tompkins"). On July

3, 2009, Bellamy acknowledged receipt of Tompkins "undated correspondence;"

informed him that Directive 4040 "makes no provision for an inmate to refer

---

[6] Tompkins testified that the date on the Letter was a misprint. The correct date for the Letter is June 24, 2009. Hr'g Tr. at p. 85.

grievances directly to Central Office;" advised him "that you must submit your grievance or appeal directly to the IGRC at the facility;" alerted him that she was returning "[his] documents to [him];" and, lastly stated that she was not retaining a copy of "[his] documents in this office." Ex. D-4, C.O.R.C. Lt.; Hr'g Tr. at pp. 16-18. On the same day, the July 3 Letter and Tompkins's document(s)[7] were placed in DOCCS' internal mail to be forwarded to Tompkins.

Tompkins received the C.O.R.C.'s July 3 Letter and his document(s), and construed the advisement that his appeal should go "directly to the IGRC at the facility" to entail forwarding it to the IGRC at his current housing, Southport. Hr'g Tr. at p. 88. Hence, Tompkins immediately mailed the C.O.R.C. Letter, Form # 2133, and his June 24 Letter to the IGRC at Southport. *Id.* at pp. 88, 93, & 114; Exs. D-11 & P-1. On July 9, 2009, B. Abrunzo, the IGS at Southport, responded by advising Tompkins that "THE APPEAL TO THIS GRIEVANCE MUST BE MAILED DIRECTLY TO CLINTON CORRECTIONAL FACILITY, WHERE IT WAS FILED, IN ORDER TO BE FURTHER APPEALED." Ex. D-5; Hr'g Tr. at pp. 88-89 & 114-15. Upon receipt of Abrunzo's memorandum, Tompkins avers that he immediately sent the same package of documents to CCF. Hr'g Tr. at p. 89.

---

[7] Although Bellamy writes that his "documents" are being returned, she is only willing to say that she saw only Tompkins's Appeal Form #2133, and that was the single document that she returned to Tompkins.

Because he did not hear anything from CCF relative to his Appeal, Tompkins wrote a Letter, on September 10, 2009, addressed to Ms. Bellamy asking whether any "IGRC/CORC decision has been rendered[.]" Ex. D-6; Hr'g Tr. at p. 90. Apparently, a copy of Tompkins's September 10 Letter was received by Ms. Brosseau at CCF because she responded with a Letter, dated September 17, 2009. Ms. Brosseau stated that "[t]here is no record of an appeal for the above grievance being received in the IGRC office at Clinton." Ex. D-7; Hr'g Tr. at pp. 59 & 90. Likewise, Ms. Bellamy wrote to Tompkins explaining that CCF's records reveal that he "did not appeal . . . [and] that the IGP Supervisor may not accept an appeal forty-five days after the date of the Superintendent's response." Ex. D-8, C.O.R.C.'s Lt., dated Sept. 25, 2009; Hr'g Tr. at pp. 21 & 90. Because an appeal had not been received within either the requisite seven (7) day period or the forty-five (45) day mitigation period,[8] Tompkins's Appeal efforts were deemed untimely. Hr'g Tr. at pp. 34, 39, & 70-73.

### III. RECOMMENDATION

---

[8] This forty-five (45) day grace period can be found in Directive 4040, § 701.6(g)(1)(i)(b), which states, in part, that "[t]he IGP supervisor may grant an exception to the time limit for filing an appeal of . . . [a] superintendent decision based on mitigating circumstances . . . . An exception to the time limit may not be granted more than 45 days after the date of the decision unless the late appeal asserts a failure to implement the decision." Ex. D-1 at p. 10. Assuming that Tompkins's appeal time accrued on either June 3 or 24 and he did not make a request for mitigation, more than forty-five days had elapsed before Brosseau received Tompkins's September 10 Letter. Hr'g Tr. at pp. 15-16 & 72-75. Therefore, mitigation circumstances were not extended to Tompkins's "belated" appeal.

As to the first two prongs of the *Hemphill*[9] analysis, the Court finds, by a preponderance of the evidence, that an administrative remedy was available, *see supra* Part I.B, but a question remains whether Tompkins had access to the directive and to other aids or staff at the time he filed his appeal. Nonetheless, Tompkins's adherence to the administrative process promulgated in Directive 4040 is not the controlling issue in our case. The Court also finds that Defendants did not forfeit their affirmative defense nor inhibit Tompkins from exhausting his remedies. There are no allegations that prison officials threatened or intimidated Tompkins to not appeal nor use any restraint to impede his efforts to appealing. The only factual contention raised by Tompkins is whether special circumstances were sufficiently presented to excuse his failure to perform a proper exhaustion of his remedies pursuant to Directive 4040. *Giano v. Goord*, 380 F.3d 670, 678 (2d Cir. 2004) (noting that special circumstances justifying a prisoner's failure to comply with administrative procedural requirements is "determined by looking at the circumstances which might understandably lead usually uncounselled (sic) prisoners to fail to grieve in the normally required way"); *see also Johnson v. Killian*, 680 F.3d 234, 238 (2d Cir. 2012) (quoting *Jones v. Bock*, 549 U.S. 199, 218 (2007) for the proposition that "prisoners must complete the administrative review process in accordance with the applicable procedural

---

[9] *Hemphill v. New York*, 380 F.3d 680 (2d Cir. 2004).

rules—rules that are defined not by the PLRA, but by the prison grievance process itself"); *Amador v. Andrews*, 655 F.3d 89, 103 (2d Cir. 2011) ("While [DOCCS procedure] is a somewhat complex scheme, it hardly constitutes special circumstances.").

Tompkins submits that, as the facts demonstrate, his interpretations of Form #2133 and Bellamy's July 3 Letter were reasonable and should constitute special circumstances, thus excusing his errors. More to the point, Tompkins claims that he did not abandon his appeal, albeit his efforts did not fully comply with Directive 4040, which he had never read until now. Conversely, Defendants assert that Tompkins misapplied the very reasonable and clear Directive 4040, his interpretations of the Form #2133 and Bellamy's Letter were neither reasonable nor excusable, and their affirmative defense should be upheld. Yet, which is the linchpin in our determination, is that Ms. Brosseau acknowledged that by submitting the Superintendent's Denial Response and other documents to the Southport IGS, Tompkins had attempted to file an appeal of his grievance and had not received any instruction from either Bellamy's Letter or Abrunzo's Memorandum as to how to pursue an extension of his time to appeal by raising mitigating circumstances. Hr'g Tr. at p. 73.[10]

---

[10] The colloquy between Ms. Brosseau and the Court during the Hearing proceeded as follows:

(continued...)

Although there may be a sundry of circumstances that conceivably constitute special circumstances, here, the Court is addressing specifically whether Tompkins's interpretation of certain prison forms and letters should fall within this rubric. This case is not the first to acknowledge that the "reasonable interpretation of prison grievance regulations may justify an inmate's failure to follow procedural rules to the letter." *Marcias v. Zenk*, 495 F.3d 37, 43 n.1 (2d Cir. 2007) (quoting *Hemphill v. New York*, 380 F.3d 680, 690 (2d Cir. 2004)). And the Second Circuit continues to note that an "imperfect exhaustion may be justified in special circumstances . . . if the inmate complied with his reasonable interpretation of unclear administrative regulations[.]" *Reynoso v. Swezey*, 238 F. App'x 660, 662 (2d Cir. 2007) (unpublished opinion) (citing *Giano v. Goord*, 380 F.3d at 678-79). And yet, there is a dearth of Second Circuit cases that squarely address this very issue.

---

[10](...continued)

The Court:    And assume for my question that the inmate who has filed a grievance and has been transferred and has this denial with the appeal statement at the bottom of it, could it be a possible construction that you returned this copy to your inmate grievance clerk, being the grievance clerk at the facility that he may be housed at the time that he signs the appeal statement?

The Witness:  Yes.

The Court:    All right. And under that circumstance, you would consider that to be a mitigating circumstance that he may have filed his appeal timely or that he may be within the 45 day period upon which to ask for an extension to consider his appeal of the grievance?

The Witness:  Yes.
Hr'g Tr. at p. 75.

As to this issue, *Giano v. Goord* seems to be analogous and thus the most instructive. In *Giano*, the plaintiff appealed his disciplinary hearing determination directly to DOCCS's acting director, which appeal was not in full compliance with Directive 4040. The plaintiff's letter to the director was an appeal of the disciplinary conviction rather than the filing of a grievance as directed by Directive 4040. Yet, the Circuit found that the plaintiff reasonably interpreted DOCCS's regulations to mean that his only administrative recourse was to appeal his disciplinary conviction and further reasonably believed that the Directive precluded him from filing a grievance on the matters related to the discipline proceedings. 380 F.3d at 676 & 678. More poignantly, the Circuit concluded that even assuming that the plaintiff misread the regulations, "his interpretation was hardly unreasonable[.]" *Id.* at 679; *accord Williams v. Comstock*, 425 F.3d 175, 177 (2d Cir. 2005) (confirming the ruling in *Giano* that the plaintiff's interpretation of a DOCCS regulation was a valid justification for failing to exhaust "simply because the interpretation was not unreasonable"). On the other hand, other courts within the Circuit have stated that ignorance, disregard of grievance process, or relying upon an officer's statement that his grievance would be reviewed and investigated does not constitutes special circumstances. *Morrison v. Parmele*, 892 F. Supp. 2d 485 (W.D.N.Y.), *aff'd Morrison v. Stefaniak*, _ F. App'x _, 2013 WL 3214625 (2d Cir. 2013) (unpublished

opinion).

Here we have an imperfect exhaustion. Tompkins was an un-counseled prisoner who had not previously filed a grievance nor appeal. After observing and listening to Tompkins during this Hearing, the Court finds him to be credible and his timeline trustworthy. To reiterate, failing to avail himself of Directive 4040 itself, especially since he never read it prior to attempting to file his Appeal nor sought any assistance, is not as determinative as Defendants implore.[11] Instead, the issue rests with the reasonable interpretation of other DOCCS appeal documents, which are an integral aspect of the prison grievance program. And, although being transferred from one correctional facility to another may not serve as an excuse for proper exhaustion, *Robinson v. Rome*, 2013 WL 3328222, at *9 (N.D.N.Y. July 2, 2013), the Court understands Tompkins's preoccupation in attempting to file his Appeal within seven days of being served with the Superintendent's Denial Response, leaving him minimal

---

[11] The Court recognizes that even failing to resort directly to Directive 4040 may be excused under these rapidly developing circumstances. Although it is disputed as to when Tompkins should have received the Superintendent's Denial Response, the Court accepts that he received it on June 17, 2013, one day prior to being packed up to be transported to another facility and two days before he was actually placed on the bus. We must remember that within that brief window of time, he was in CCF's SHU and likely would not have had a reasonable opportunity during that two-day period to have access to inmate clerks for instruction or avail himself of the Directive 4040, which would not have been in his property. Tompkins was in transit, without his property, for four days before arriving at Southport and receiving his property on or about June 23, 2013. It is reasonable for Tompkins to realize the urgency of filing his appeal within seven days of receiving it, which would have been June 24, 2013. Again, there would have been little, if any, time to consult the library for the Directive and digest the fourteen-page document, or consult officials at Southport's SHU for instruction. And, as the record reflects, Tompkins sent his appeal to C.O.R.C. on that day.

time to research the proper course of action and causing him to rely upon his own interpretation of the only document at hand, Form #2133.[12]

Even though Form #2133 directs that the form be returned to the inmate grievance clerk, the phrasing of that sentence is peculiar. The phrase "[i]f you wish to refer the above decision to the Superintendent," is not vernacular commonly used in bringing an appeal. The verb "refer" commonly means to pertain to, reference to, relate to, and it can also mean direct to. Yet, its usage in this context for an un-counseled inmate may be odd, unclear, and ambiguous. Next, the subsequent sentence states, "[p]lease state why you are appealing this decision to the C.O.R.C." Reading those two sentences together and relying upon commonly employed conversational prose, Tompkins reasonably believed that he had to file his Appeal <u>directly</u> with C.O.R.C. by June 24, 2013, in order for it to be filed timely. Such an interpretation of the last sentence of Form #2133 by an un-counseled inmate is not unreasonable.[13]

---

[12] It is worth noting that IGS Brosseau testified that an inmate's transfer would be considered by her in an application for mitigating circumstances. Hr'g Tr. at pp. 67-70.

[13] This situation is distinguishable from the scenario found in *Morrison v. Stefaniak*, _ F. App'x _, 2013 WL 3214625 (2d Cir. 2013). In *Morrison*, the plaintiff misfiled his appeal to the superintendent primarily because he read only a portion of the IGRC's response form, and accordingly failed to properly exhaust his administrative remedies. Here, Tompkins read the entire form but construed the last sentence as directing him to appeal directly to C.O.R.C. Second, Morrison acknowledged that he did not file an appeal because his claim was under investigation by the Inspector General and the FBI, diminishing any good reason for this failure to follow the procedure that was provided directly to him. *Morrison v. Parmele*, 892 F. Supp. 2d 485, 488 (W.D.N.Y. 2012). Whereas Tompkins was not waiting for any investigation nor did he raise a

(continued...)

Even when Tompkins received Ms. Bellamy's July 3 instruction to file the appeal with the IGS "at the facility," it was not unreasonable for him to construe that direction to mean at the facility were he was then housed, Southport, as opposed to the facility where the incident occurred, CCF. Ex. D-4. The Bellamy Letter did not specifically clarify "at the facility" to mean CCF,[14] and for an un-counseled, first-time grievant, such a statement would be perplexing. Therefore, it would not be unreasonable for him to assume that "at the facility" meant Southport. Likewise, the instruction of Form #2133 directing that the appeal be filed with the inmate grievance clerk "at the facility" could be construed by a prisoner who had been recently transferred from one prison to another to file it with the grievance clerk where he was housed. Hr'g Tr. at p. 75 (CCF's IGS Brosseau's testimony); *see supra* note 10.

Had the Appeal been filed with CCF on July 6, 2013, instead of at Southport, it would have been within the forty-five day "mitigating circumstance"[15] window for the belated filing of an appeal. In fact, IGS Brosseau acknowledged that Tompkins

---

[13](...continued)
similar set of actions impeded him from filing his appeal.

[14] Ms. Bellamy acknowledged that in her July 3 Letter, she did not advise Tompkins of the exact facility the Appeal was supposed to be filed. Hr'g Tr. at p. 25. Nor did Ms. Bellamy send a copy of this Letter to CCF. *Id*. at p. 26.

[15] The Court understands that the forty-five day mitigation period is not a special circumstance but it does contribute to an understanding of the totality of the circumstances and what elements would have been available to Tompkins in order to timely file his Appeal. *Giano v. Goord*, 380 F.3d at 678.

had, in fact, attempted to file an appeal while at Southport. *Id*. at p. 73. In all likelihood then, IGS Brosseau would have extended to Tompkins mitigating circumstances and accepted his July 6 Appeal. *Id*. at p. 72. After receiving notice from Southport IGS Abrunzo, Tompkins, on July 10, forwarded his grievance documents to CCF. *Id*. at p. 89. Although CCF records do not indicate receipt of Tompkins July 9 Letter with attachments and Brosseau does not recall ever seeing it, *id*. at pp. 55, 58-59, & 60-61, the Court accepts that he indeed mailed it to CCF after receiving instruction from Southport IGS Abrunzo and conceivably it was lost.[16] Consequently, Tompkins reasonably misunderstood the correct facilities at which to make inquiries and forward complaints. By the time Tompkins forwarded his September 10 inquiry on what he thought was his pending appeal, it was too late as the forty-five-day mitigation period had expired.[17]

It is unrefuted, under these circumstances, that Tompkins did not abandon his right to appeal his grievance and made a rigorous and good-faith effort to follow the grievance procedure and exhaust his remedies. It is also uncontroverted that

---

[16] The Court accepts Tompkins's testimony as credible and consistent. Based on all that has been presented, it is reasonable to conclude that Tompkins never failed in his attempts to exhaust until he received certain finality and foreclosure of further appeals.

[17] Notwithstanding Directive 4040, § 701.6(g)(1)(i)(b), it remains somewhat unclear how IGS Brosseau would calculate that forty-five day mitigation period inasmuch as she stated that she would accept late receipt of an appeal based upon a subsequent transfer of the inmate.

Tompkins believed that his Appeal had been perfected by July 10, 2013, and that it remained viable for consideration by C.O.R.C. His September 10, 2013 inquiry to Ms. Bellamy as to the status of his Appeal clearly evinces that reasonable belief. Furthermore, it would be illogical to write the September 10 inquiry unless he indeed mailed the July 10 Appeal to CCF. Exhaustion requirements should not be "so rigid as to permit the barring of all suits brought after administrative remedies are no longer available, regardless of circumstances, and simply because the plaintiff failed to follow prison grievance procedures to the letter." *Giano v. Goord*, 380 F.3d at 677. This is not a situation where Tompkins was trying to circumvent the exhaustion requirements but rather acted diligently in an effort to comply with them. Therefore, even assuming that Tompkins read the Superintendent's Denial Response and Ms. Bellamy's July 3 Letter incorrectly, his interpretations of both are hardly unreasonable, especially when the Court is supposed to examine the circumstances which understandably might lead a usually un-counseled prisoner to fail to grieve "in the normally required way." *Id*. at 678 & 679.

The Defendants have the burden of proving that Tompkins did not exhaust, even when weighing the *Hemphill* caveats. Tompkins may have the burden of production with regard to his claim of special circumstances, but the burden of proof always remains with the Defendants. It cannot be said that the Defendants, by the

preponderance of evidence, overcame the production of special circumstances. Based upon finding that special circumstances prevail to justify Tompkins's failure to properly exhaust his grievance, and finding that the Defendants failed to meet their burden, it is hereby

**RECOMMENDED** that the Tompkins's lawsuit should proceed to trial; and it is further

**RECOMMENDED** that the District Judge find that special circumstances exist and that an exception to proper exhaustion exists; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. <u>**FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.**</u> *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date: September 27, 2013
Albany, New York

Randolph F. Treece
U.S. Magistrate Judge